UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HAUGEN,

        Appellant,

   v.

MURRAY,

        Appellee.

Case No.  14-cv-03638-VC

**ORDER DISMISSING APPEAL FROM DECISION OF BANKRUPTCY COURT**

Defendant-Appellant Mark Haugen appeals from the United States Bankruptcy Court's ruling awarding to Plaintiff-Appellees Alan and Elizabeth Murray damages of $31,500 for Haugen's willful violation of the automatic stay provision of the Bankruptcy Code.  Having reviewed the parties' submissions, the Court affirms the decision of the bankruptcy court.

**I.  Background**

In February 2011, the Murrays filed for Chapter 11 bankruptcy.  In June 2012, while the automatic stay was in effect, Haugen filed a lawsuit against the Murrays in state court.  The Murrays learned of this suit when Haugen attempted to serve them, and subsequently commenced an adversary proceeding against Haugen in the bankruptcy court for violation of the automatic stay.  The Murrays filed a motion for summary judgment and, in December 2013, the bankruptcy court ruled that Haugen had wilfully violated the automatic stay by filing the state court complaint without the bankruptcy court's leave.  Following a bench trial to determine the Murrays' damages under § 362 of the Bankruptcy Code,[1] the bankruptcy court awarded the Murrays $8,000 for medical expenses incurred "as a direct result of the stress Haugen caused by bringing his action in

---

[1] Section 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  violation of the automatic stay," $15,000 in general damages for emotional distress, $1000 in

2  attorneys' fees, and $7,500 in punitive damages.  ER 350–352.

## II.  Standard of Review

4  The Court reviews the bankruptcy court's factual findings for clear error and its legal

5  conclusions de novo.  *See In re Tucson Estates*, 912 F.2d 1162, 1166 (9th Cir. 1990).  The

6  bankruptcy court's assessment of damages under § 362 is reviewed for an abuse of discretion.  *See*

7  *In re Miller*, 262 B.R. 499, 503 (9th Cir. BAP 2001).  The bankruptcy court's decision with respect

8  to attorney's fees and costs is reviewed for abuse of discretion or erroneous application of the law.

9  *See In re Dawson*, 390 F.3d 1139, 1145 (9th Cir. 2004).  Under the deferential abuse-of-discretion

10  standard, the Court must uphold a "determination that falls within a broad range of permissible

11  conclusions in the absence of an erroneous application of law."  *See Microsoft Corp. v. Motorola,*

12  *Inc.*, 696 F.3d 872, 881 (9th Cir. 2012) (internal quotation marks omitted).  The Court will reverse

13  "only when . . . convinced firmly that the reviewed decision lies beyond the pale of reasonable

14  justification under the circumstances."  *Id.* (internal quotations omitted).

## III.  Discussion

16  On appeal, Haugen does not challenge the bankruptcy court's determination that he

17  wilfully violated the automatic stay.  Nor does he challenge the bankruptcy court's award of

18  punitive damages.  And he does not dispute that a debtor may, at least in certain circumstances,

19  recover emotional distress damages arising from a willful violation of the automatic stay

20  provision.  He argues only that the bankruptcy court abused its discretion by awarding damages

21  for medical expenses, emotional distress, and attorneys' fees because these damages were not

22  supported by the evidence adduced at trial.

### A.  Medical Expenses

24  Haugen does not question whether the Murrays did in fact incur medical expenses totaling

25  at least $8,000 after he attempted to serve them in his state court action.  He appears to

26  acknowledge (or at least does not dispute) that, following the attempted service, Mr. Murray was

27  diagnosed with atrial fibrillation and incurred significant medical expenses.  Haugen argues only

28  that the bankruptcy court abused its discretion by awarding damages for Mr. Murray's medical

2

1    costs in the absence of expert testimony establishing that Haugen's actions caused Mr. Murray's

2    cardiac problems, particularly in light of Mr. Murray's history of high blood pressure.

3          The only evidence offered at the bench trial on the issue of damages was the testimony of

4    the Murrays.  Ms. Murray testified that she and her husband learned of Haugen's lawsuit six

5    months after the approval of their bankruptcy plan, a process that was "much longer and tougher

6    than it should have been."  She testified that she and her husband "were moving forward and

7    everything with the plan was working well.  And then six months later, out of the blue, when we,

8    you know, are finally trying to get our feet underneath us and all of this – is taken care of, we

9    thing, we get served with another lawsuit from the same people."  Ms. Murray further testified that

10   learning of Haugen's state court lawsuit upset her and Mr. Murray very much, and that Mr. Murray

11   subsequently developed physical symptoms including high blood pressure, inability to sleep, and

12   general signs of stress.  She testified that her husband sought medical help from his primary care

13   physician, who diagnosed an irregular heartbeat and referred him to a specialist.  Ms. Murray

14   acknowledged that Mr. Murray had been under stress as a result of their bankruptcy proceeding,

15   but testified that she noticed a change in her husband's stress level after he was served with the

16   summons, and that she attributed this additional stress to the Haugen's lawsuit.

17         Mr. Murray testified that, around a week before being served in the state court suit, he had

18   a conversation with Haugen in which they shook hands and agreed that their dispute was over and

19   that they both "wanted to move forward."  Mr. Murray further testified that he experienced stress

20   and anxiety as a result of being served.  He began to notice physical symptoms that he had not

21   previously experienced, including high blood pressure, fatigue, and an irregular heartbeat.  Mr.

22   Murray testified that he was diagnosed with atrial fibrillation, and incurred more than $9,000 in

23   medical bills in connection with this heart problem.

24         Haugen is correct that the fact that Mr. Murray developed atrial fibrillation after learning

25   of Haugen's lawsuit is only circumstantial evidence that Haugen's lawsuit caused the heart

26   condition.  But "[i]t is a time-tested rule in this circuit that circumstantial evidence is not

27   inherently less probative than direct evidence."  *United States v. Green*, 554 F.2d 372, 375 (9th

28

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1   Cir. 1977).  Haugen does not identify a single case holding that a plaintiff is required to provide

2   expert medical testimony to establish causation.

3   On cross examination, Ms. Murray did acknowledge that Mr. Murray had taken medication

4   for high blood pressure prior to filing for bankruptcy.  But Haugen offered no evidence that it was

5   Mr. Murray's prior high blood pressure, rather than Haugen's violation of the stay, that caused Mr.

6   Murray's atrial fibrillation.  Indeed, Haugen offered no evidence of his own to rebut the Murrays'

7   testimony.

8   The Court must affirm the bankruptcy court's damages award "unless it is clearly

9   unsupported by the evidence or grossly excessive, monstrous, or shocking to the conscience." *In*

10  *re Computer Commc'ns, Inc.*, 824 F.2d 725, 731 (9th Cir. 1987).  Although the evidence here was

11  far from overwhelming, the Court cannot say that the bankruptcy court's award of $8,000 for Mr.

12  Murray's medical expenses was "clearly unsupported by the evidence."

### B.  Emotional Distress

> [T]o be entitled to damages for emotional distress under § 362[k], an individual
> must (1) suffer significant harm, (2) clearly establish the significant harm, and (3)
> demonstrate a causal connection between that significant harm and the violation
> of the automatic stay (as distinct, for instance, from the anxiety and pressures
> inherent in the bankruptcy process).

17  *Dawson*, 390 F.3d at 1149.  "Fleeting or trivial anxiety or distress does not suffice to support an

18  award." *Id.*  It must be clear from the evidence "that the individual suffered significant emotional

19  harm." *Id.*

20  Haugen argues that the bankruptcy court abused its discretion by awarding damages

21  because the Murrays' evidence, which consisted solely of the Murrays' own testimony, was

22  insufficient to clearly establish that the filing of Haugen's his state court lawsuit in violation of the

23  stay caused significant Mr. Murray's significant emotional harm.  In particular, he argues that

24  expert testimony was required to establish that his actions caused Mr. Murray's harm.  However,

25  as the Ninth Circuit explained in *Dawson*:

> An individual may establish emotional distress damages clearly in several
> different ways.
>
>     •   Corroborating medical evidence may be offered. . . .

4

- Non-experts, such as family members, friends, or coworkers, may testify to manifestations of mental anguish and clearly establish that significant emotional harm occurred. . . .

- In some cases significant emotional distress may be readily apparent even without corroborative evidence. For instance, the violator may have engaged in egregious conduct.

*Id.* at 1149–50.

The testimony described in the preceding section is sufficient to satisfy the evidentiary requirements discussed in *Dawson.* Accordingly, the bankruptcy court did not clearly err in determining that Mr. Murray had suffered sufficient emotional harm, as corroborated by his wife's testimony, and that the harm was caused by Mr. Haugen's breach of the automatic stay. And because the amount of the award is not grossly excessive, the Court affirms the bankruptcy court's award for emotional distress.

### C.  Attorney's Fees

In *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010), the Ninth Circuit held that attorneys' fees under § 362(k) are limited to "those attorney fees related to enforcing the automatic stay and remedying the stay violation, not the fees incurred in prosecuting the bankruptcy adversary proceeding in which he pursued his claim for those damages." *Id.* at 940. Here, the bankruptcy court's Memorandum After Trial made clear that the $1,000 award was limited to "pre-adversary proceeding attorneys' fees." AR 353. The fact that the Murrays had not received an invoice from the Perlman & Stunich firm (which was representing the Murrays in Haugen's state court lawsuit) until Ms. Murray requested one in advance of the bench trial in the adversary proceeding has no bearing on whether those fees were incurred in enforcing the automatic stay. There is nothing in the record to suggest that any part of the $1,000 award was for fees incurred in prosecuting the adversary proceeding. Nor does the amount of the award appear unreasonable. *See In re Roman*, 283 B.R. 1, 12 (9th Cir. BAP 2002) ("Generally, in determining the appropriate amount of attorneys' fees to award as a sanction, the court looks to two factors: (1) what expenses or costs resulted from the violation and (2) what portion of those costs was reasonable, as opposed

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to costs that could have been mitigated." (internal quotation marks omitted)).  Accordingly, the

Court affirms the bankruptcy court's attorneys' fees award.

### IV.  Conclusion

For the reasons stated above, the Court affirms the bankruptcy court's awards for medical

expenses, emotional distress, attorney's fees arising from Haugen's violation of the automatic stay.

**IT IS SO ORDERED.**

Dated:  June 22, 2015

_____

VINCE CHHABRIA
United States District Judge

United States District Court
Northern District of California

6